The case on the docket this morning is 22-50612, D.C. Operating, L.L.C. v. Colmenero. Ms. Lerma. Yes, Your Honor. Good morning, Your Honors. Veronica Teresa Lerma on behalf of D.C. Operating, Medina, and Corral, the appellants in this case. The appellants challenge the constitutionality of SB 315. 315 is a law that was passed in Texas relating to the restriction on age of persons employed by or allowed on the premises of a sexually oriented business, creating a criminal offense. SB 315, Your Honors, also additionally changed the law definitions of the Texas Civil Procedures Remedies, Chapter 125, that it would be illegal to employ or enter into contract. It would result as a common nuisance. It also changed the labor code, Your Honors. A sexually oriented business would not be able to employ any person under 21 years of age in any fashion, not simply nude dancing. And it also changed the penal code, specifically 43-251, where it altered the definition of a child as a person under the age of 21 years. SB 315 eliminates any labor and law employment protections under the state of Texas and presumably has the idea that an 18, 19, or 20-year-old is incapable of making adult decisions, except when it comes to where and with whom they can decide to lawfully make a living. Is there a First Amendment right to be nude in public? Yes, there is, Your Honor. Not in public, excuse me. There is a First Amendment right for nude dancing. And that is an issue that is created with what this Court has already done in Doe v. Landry. In that case, the Court decided that nude dancing for a person under the age of 21 was not permissible in an adult entertainment business that sold alcohol. In this case, D.C. operating does not sell alcohol. Is it a BYOB? Yes, Your Honors. The Supreme Court has, in a series of cases, made clear that whatever potential First Amendment argument there may be in terms of a First Amendment interest, it's overwhelmed by the government interest in preventing sexual assault and preventing any number of social ills. So maybe rephrase my question. Would it be unconstitutional for a government to prohibit nudity in public? Yes, Your Honor. It would be unconstitutional because a person has the right to express themselves. And a person has that right. What is interesting about the sexually oriented— Somebody could be nude in this courtroom, and there's nothing that the Court could do about it. Well, the Court can certainly then put a criminal offense against that person. There are criminal ramifications to that. Right. So if you can criminalize it, that's really my question, is can you criminalize nudity in public, in a public park, in a courtroom? So your view is you could criminalize that? Yes, it could be criminalized.  If you can criminalize, then obviously we're not talking about a First Amendment violation if you can criminalize. Why isn't this just such a labor law? We have plenty of child labor laws. Well, that is the other portion. That is the Fourth Amendment, the 14th Amendment protection, Your Honor, where it is prohibiting the rights of an 18-, 19-, and 20-year-old from making a living the way that it chooses—the way that that person chooses to make a living, the way that that person wishes to express themselves or wishes to conduct themselves to make that living. What the sexually oriented business then provides is a place and location for them to be able to do that. I understand a lot of jurisdictions, you can't drink until you're 21. Yes, Your Honor. It's been a while since I've been 21, so I don't really remember these laws. Would it be illegal to have a child labor law? Maybe I won't use the word child. You can't be in a place where alcohol is sold unless you're over 21. Would that be okay? Well, yes. And that is certainly the law in Texas in some locations where you cannot serve alcohol, but you can certainly be present. All right. But hypothetically, assuming that you're in a jurisdiction where you can't consume alcohol until you're 21, could that jurisdiction say you cannot work at an establishment where alcohol is provided until you're 21? Would that be okay? Well, the court in Doe v. Landry made that distinction, and that's what makes this Texas law difficult, because there's other jobs that a person could possibly have, including— I'm just asking for your view in terms of the legal rule we should adopt. If a jurisdiction were to say not only can you not drink until you're 21, you can't work at a place where drinking takes place until you're 21, would that be permissible or impermissible? I believe that that would be impermissible. And if you're asking for my opinion, I think the reason is because there are 18-, 19-, and 20-year-olds who certainly need to make a living. There are certain— But it wouldn't be a First Amendment violation. What violation would that be? Well, I believe it would be a labor and employment violation, Your Honor. Ms. Lerma, do you concede that the case is moot as to the two individual plaintiffs here? I believe one is already over 21, and one celebrated a birthday recently in making her 21. It may be moot as to them, but it is not moot as to similar-situated persons who may have this similar issue. They didn't file a class action, number one. And number two, I am very unclear on whether—so D.C. operating would be suing under an overbreadth claim, it seems to me, because it would be assuming the garb, so to speak, of these undressed young minors who are 18 to 21 years. In other words, suing on behalf of third parties, which invokes overbreadth. And I'm not sure why overbreadth should apply to allow this kind of establishment to invoke First Amendment rights of performers. Well, I believe— In other words, nobody is saying you don't have a right to do business. It's just saying your performers have to be over 21. So you're, in essence, arguing the rights of the minors, I mean, you know, the under-21s. Well, I think that that is the situation where Doe v. Landry creates confusion, especially in our jurisdiction. In that case, the Court specifically said that the State has also demonstrated that its regulation does not burden substantially more speech than is necessary because it prohibits semi-nude dancing for 18 to 20-year-old individuals in alcohol-licensed clubs only. Semicolon. They may still participate in expressive conduct in non-alcohol-licensed establishments. Well, I mean, it ruled on it, but it didn't—did it expressly decide whether overbreadth is permissible here? I don't believe Doe did, but in this case, Your Honor, this particular business may want to employ 18, 19, 20-year-olds. And 18, 19, 20-year-olds may want to apply for jobs to conduct themselves and to dance for this business. And if they do, then they should have the opportunity to do so if they wish. But, again, that's not a First Amendment issue. That's a—something about, you know, right to do business or something. That's Commerce Clause or who knows what. Yes, Your Honor, I understand that. But if they wish to express themselves under the First Amendment, where else would they be able to do so? Well, apparently they can do so in private parties or frat houses or whatever. If the legislations—if the legislative intent of this particular statute is to protect young people from sexual exploitation and human trafficking, and instead they are told, well, you can do it at a private venue or you can do it at a frat party, for instance, it would expose them, I believe, to greater potential for sexual exploitation than doing it in a business that is regulated. Well, there are two answers to that. And the first one is that the legislature need not cure 100 percent of the problems if it can cure 50 percent. And the second one is that there was a good deal of underlying legislative debate about the use of these establishments to promote prostitution and human trafficking. But in addition, Your Honor, I believe that the legislation must then show a connection between the actions being regulated, which in this case is the erotic dancing of 18, 19, 20-year-olds, and something else in a least restrictive means in order to then say the secondary effects of human trafficking or sexual exploitation will not take place. In this case, they're banning all employment for any 18, 19, or 20-year-old in any capacity in any one of these sexually oriented businesses. In addition, Your Honors, one of the policy arguments is that it discriminates to protect women from making… Can you read that issue if this is not a facial challenge? I mean, this seems to me to be an as-applied challenge by two women who at least were 18, 19, or 20 years old. We're just dealing with their claim. We don't have anyone here who's in that age range saying, I just want to be a cashier or a dishwasher. No, Your Honors. I only have Ms. Medina and Ms. Corral. It's just making it an as-applied challenge, not a facial challenge. Yes, Your Honor. With respect to the SB 315, although we can surmise that it is packaged with good intention, the idea to combat human trafficking, it employs unconstitutional means. It deprives these ordinary people of their occupational, associational, expressive liberties that are secured under the Texas and U.S. Constitution. And we're asking the Court to review this case and reverse the order dismissing the case. Brevity is the soul of wit. I'm sorry, Your Honor? Good for you for conceding time if you have nothing… Yes, Your Honor. And I yield back my time to the Court. May it please the Court. Ari Kunin, Deputy Solicitor General for the State Defendants. I think I'd like to begin by sort of articulating the two alternative grounds on which this Court should hold to affirm the First Amendment issue in this case that I think we've just heard is really the central driving factor. The first is to say that because the individual plaintiffs, the two dancers, their claims are moot. The live claims are those involving the club itself, D.C. operating. And from their perspective, there's nothing inherently expressive that even triggers First Amendment scrutiny about employing people of a certain age. So let's put that to one side. Now, even apart from that, separately, even if there's some aspect of this case that still triggers First Amendment scrutiny, the level of review that would be applied would be the O'Brien four-factor test, which SB 315 easily satisfies, essentially the reasons articulated by the District Court. So before I get into rational basis as a matter of due process and equal protection, I'd like to turn straight to the First Amendment claim. As I noted at the outset, there's nothing inherently expressive about being a particular age, whether it's 18, 19, 20. From the club's perspective, this particular club has brought a claim that it wishes to employ people to engage in nude dancing. I believe as a BYOB club, its prerogative is to allow fully nude dancing if that's what it wishes to provide for its patrons. Now, the problem for its claim, it's still unresolved by my friends on the other side, is there's nothing inherently expressive about the particular age of D.C. operating's dancers. This is not the sort of claim that I think, Judge Ho, your question you may have alluded to earlier in the Supreme Court's precedent concerning things like fully nude dancing and whether the municipality can ban fully nude dancing. I think the short answer to that is of course the court can ban public nudity. What's protected by the First Amendment is expression. I believe the protection extends to something in the nature of the term erotic expression. There's something erotic, some erotic message about nude dancing, and I think what the problem for D.C. operating here is that it's not prohibited in any way by SB 13 from allowing its patrons to see that. I think the most it could possibly say is that some of the people that it has employed or perhaps wishes to employ might be of a particular age, but there's no communicative content in the age of its dancers. If there was, it was certainly incumbent on D.C. operating as the plaintiffs in this case to actually articulate what that is. That's actually the question in my mind when you say this. Is your point that they have not alleged an expressive injury based on the age or that they couldn't, that there's no world in which they could theoretically allege one? I assume we're in the former bucket. I think the narrow sort of answer to that is they haven't alleged it. They haven't pled it. They haven't pled it. I just can't stand here and sort of play out all the hypotheticals. Their business isn't, either their business or their complaint hasn't been articulated in this fashion and therefore. That's right. That's right, JoJo. Perhaps in fairness, even if we maybe spin out that hypothetical, I think the answer there is the most that you could possibly show from that type of allegation is some sort of incidental effect on some sort of communicative message because it's still, again, this SB. Still have to apply the Barnes and all the Supreme Court cases. Perhaps, although we've identified 11th Circuit precedent from a case called Indigo Room. There's another case called Gary v. City of Warner Robins. But Indigo Room is a case where a municipality says you basically have to be 21 to go into, I believe it was bars, things like that. Well, someone under 21, 18-year-old, says I want to go into this bar because they're having a political rally there.  And, of course, they can't do that because they've got to be 21 to go into that establishment. They try to do it. They're cited. They bring a First Amendment challenge. Well, the 11th Circuit says this is in the nature of sort of general conduct restriction, much like this court in Vote for America v. Steen in citing the Supreme Court's Clark case noted, right? Sleeping in public, any number of actions that one can physically do with their body, they're not inherently communicative. You do have to have some sort of speech element, expressive element to the thing that's being prohibited to even get to a point of First Amendment scrutiny. So in those cases that we've identified, there was not even a point to which you actually apply the OPRM test. But, again — Your point is we're not even getting to a First Amendment analysis because the target of this rule is not expression. It's age, and age may track with — well, one issue would be alcohol. Right. Yes, Your Honor. And to be clear, this is, as I laid out, sort of one of two alternative holdings that could get us to the same place. Because even if I'm wrong about everything I just said and there is some sort of incidental effect that ties to expression, and I don't believe there is, but even if there is, that simply triggers that type of intermediate scrutiny, O'Brien four-factor analysis that Your Honor mentioned. And so maybe this is sort of a good point in the argument to turn to. By the way, just to make sure I understand, the law is not limited to alcohol, right? No, it's not. The law is not SOBs. It's not. It's not. It's about SOBs generally. It's not about SOBs where alcohol is consumed or served. It is not limited to alcohol. And I could point the Court — it incorporates — Well, I take your point as this business does provide alcohol or is BYOB. I believe that it's BYOB, but the law itself incorporates by reference a definition from the local government code. It's at 243.002. And the way sexually oriented businesses are defined there is it's essentially places where there is a primary business of providing a service that provides sexual stimulation or sexual gratification. So this is — and there's an important reason. Maybe this is getting us into the sort of O'Brien factor analysis. Good transition point anyway. Part of what the legislature had in front of it was recommendations that are at ROA 662 through 63, and then again starting at ROA 975 around there from Kara Pierce, who is the chair of this legislatively created human trafficking task force, where their job is to come up with recommendations that are going to help fight human trafficking in Texas and then tell the legislature, here are some things you should do. So this is undisputedly one of the recommendations that was made by this task force in trying to combat human trafficking for these people 18, 19, and 20 years old. And one of the things that's noted in part of why it's not tied to alcohol in a specific way, not tied to strip clubs specifically, you can see at ROA 662 and 663, these types of businesses, the atmospheres, a lot of them sometimes have back rooms ostensibly for the viewing of pornography, but these are places that trafficking and the types of activities that lower the inhibitions of vulnerable young adults can take place. Well, that's going to occur regardless of whether, strictly speaking, they're providing alcohol, and regardless of whether it's some sort of performance on a stage. And so that type of link by Ms. Kara Pierce, the chair of that task force, is well supported in the record that was in front of the legislature. So it's just a matter of the four-factor O'Brien test. What's the evidence specifically that there's a gap, it stops at 20, and it becomes less of a problem at 21? So I think there are a couple of examples in the record. So one of the things Ms. Pierce testified about, this is at ROA 982, is basically just sort of on experience and the number of victims that they've encountered. The vast majority of them were sort of in that 18-, 19-, 20-year-old range. And then also I would point the court to ROA 663. This is her declaration she submitted in district court. One of the things that makes it very hard for the traffickers to do when someone turns— sorry, let me back up. Under 21, it's easier for the traffickers to get fake IDs, and the traffickers just have a more ready supply of potential victims. And it just gets much harder to do when someone turns 21. I think it's something that was alluded to in the earlier portion of today's argument, that the legislature doesn't have to get it 100% right. If there's a link here to trigger any kind of First Amendment problem, what you'd have to show is that the legislature was targeting some communicative content. So if we're talking about the age— I'm not limiting it just to First Amendment. Okay. To all of their arguments. The evidence I read in your brief did not seem to—go ahead. Sure. So, you know, if we open it more broadly into sort of due process, and I think for reasons we've heard today, the equal protection is really sort of a non-factor. I mean it's essentially—the argument they're making now is forfeited, and it's a rational basis based on age distinctions that was well supported in the district court's reasoning. If we just look at the due process aspect of it, it's a rational basis test. And if the legislature can say, well, this is an important—this interest is legitimate, fighting human trafficking, I think it's beyond dispute that that's a legitimate governmental interest and that this is something— It does. It does, Your Honor. What specifically in the evidence that says it's not a big problem once you're 21? The—sorry, if it is not as big a problem as if you're 21. Once you turn 21. So, and again, I'm not— If you take IDs, what else? So we've got the ROA 662 to 663, I think, lays out most clearly the links that were in front of the legislature and then the record citations at 975 through 982, and that's Kara Pierce's testimony. And I don't think you're going to find a specific legislative finding that says somebody's risk of human trafficking cuts off at 21. I mean, this is just not part of what the legislature's burden is to do under rational basis. I'm assuming it's just the same general rationales that support alcohol laws. I think that's— It's a maturity issue. It's essentially right. As far as maturity, the—like, for example, ROA 976 through 977, and we talk about people in this under 21 range being easier to manipulate and these environments putting people in a situation where their inhibitions are lowered. So I would point the court to that. On the sort of over-breath versus the fourth factor of the O'Brien test, I think there are a couple of points to emphasize there. The law in this case is not a— it's not subject to sort of a least restrictive means test, and perhaps, Judge Richman, this gets to some of your questions as well. The analysis has to do with whether the goals of the legislature would be accomplished less effectively without this regulation. Here they clearly would. The other final point I would make on the constitutional analysis is this law leaves ample other avenues of expression for people, for example, like the individual plaintiffs. Even in the cases that involve bans on fully nude dancing, the court has said as long as you have avenues for expression, the restriction does not violate the First Amendment. And, of course, the expressive content is— if there's an erotic message, they can still do that in venues other than these sexually oriented businesses. It does not prohibit nude dancing in any way. It does not prohibit—my friend on the other side has mentioned her view that SB 315 regulates erotic dance of 18- to 20-year-olds. Of course, it doesn't say anything of the sort. There's no mention of erotic dance, and 18- to 20-year-olds can still erotically dance at other venues, including for financial compensation. So for those reasons, we'd ask the court to— I'm not sure I understand that. They could do it, they just can't do it at these enumerated locations? Is that your point? That's right. So I think earlier there was some discussion of the fact that other private engagements, things like that, and, of course, theatrical performances, the narrow definition of a sexually oriented business has to do somewhere with the primary business of providing sexual stimulation or sexual gratification. Of course, sexual stimulation, sexual— You can't engage in this activity, you just can't engage in this activity where the business is designed around the activity. It is essentially a similar approach to the court token, the Doe versus Landry and cases like that, the plurality in PAPS-AM, right, that the First Amendment protects expression, not the just pure ability to display certain anatomical areas. Was there any further questions? Thank you. Your Honor, I have a quote. Good morning, Your Honors. May it please the Court, Ruben Duarte, Assistant County Attorneys, on behalf of Ricardo Samaniego in his official capacity as County Judge of El Paso County, Texas, as well as on behalf of Richard Wiles, the elected official in his official capacity as Sheriff of El Paso County, Texas. The Chief Judge asked my colleague here about, you know, what evidence is there about age 21 and the— The testimony came from Ms. Pierce that most of them are between ages 18 to 21. In fact, most that she encountered would be between the ages of 13 and 20, and those are on page of the record 982 and 983. The county's position is that there are three issues that were brought up here on appeal. The first one was whether SB 315 violates the 14th Amendment due process. It is the county appellee's position. It does not. The second issue that was brought up was whether SB 315 violates the First Amendment. The case, the controlling law states that it is not, and that's a county appellee's position. The third argument that was brought up was brought up on equal protection, and it is our—and I briefed this in our response— whether it violates equal protection on the basis of age or gender. And because of forfeiting, we believe that they have forfeited those arguments. Now, with the 14th Amendment due process, and it is on page 21 of our briefs, and I'll be brief to give as much time as I can to the court. There is a 14th Amendment due process to pursue an occupation. However, as briefed by the county appellees, there's a reasonable government regulation that can occur that would not offend any constitutional protection in this case. A reasonable government regulation is based on a rational basis, which is the most differential review. And it is on the plaintiff to show that the regulation, here in this case, 315, that it is wholly arbitrary and does not provoke a legitimate state interest. Their pleadings, based on the trial court's decision and order granting the states and the counties 12B6 motions, they have wholly failed to do it, the plaintiffs, that is, the appellants. As for the First Amendment, we address it on page 23 of our brief. And the First Amendment states that as long as there is a regulation serves a compelling state interest, not related to the suppression of ideas, and regulation cannot be achieved through less restrictive means, it passes muster. What appellants have tried to do is they have tried to differentiate Doe 1 with SB 315 by stating they're different. And though this court, in 2018, issued its decision in Doe 1, it should reach a different conclusion on SB 315 for two reasons, is their argument. One is that in Doe 1, that establishment served alcohol. Dreams is a BYOP. That does not at all render a different analysis. As long as the amendments, I mean, the case law, and those requirements are met, whether an establishment serves alcohol or not brings about no different conclusion. The second thing is that in Doe 1, it was limited to nude dancing, so it did not cover other occupations, which 315 does, which lends greater force that it is content neutral under the First Amendment, because you cannot be a bouncer. You cannot be a cashier. You cannot be a dancer. You can't be a cleaning person or any other employee under SB 315. That is very content neutral. It has nothing to do with the expression of speech. And, of course, O'Brien, which both of the appellees have cited extensively in the brief, the four elements of O'Brien, and we both noted that the appellants conceded elements 2, 1, and 3, and therefore we briefed the elements, and it's on page 24 of the county's briefing that we have addressed those issues. The reason for 315, and it's noted on page 3 of the county's brief, is it's to combat human trafficking. I see that I'm out of time. I do not know if the court has any questions for me. No? We just simply ask that this court affirm the granting of the 12B6 motions in favor of the appellees. Thank you very much. Thank you. Okay. Your Honors, why 21? What happens at 21 that it's a magic number that suddenly everything is clarified? Life experience and maturity somehow congeal? There are criminal cases in medical science where young people at the age of 25 is finally the time when their frontal lobes start developing. Impulse control lowers. Decision-making improves. And if that's the case, then maybe we should then start considering our jurisprudence in criminal law and upping the age perhaps to 25 when life experience and maturity may make a difference and consider adults at 25. In this case, the testimony that the district court received was that there was no magic number. There's not a reason that an 18-year-old may be... It's really the same thing about alcohol laws. Yes, and in all... I don't want to make that argument to the legislature. The question is, why should a court interfere with that policy decision? Well, it appears that the case law and the case precedent that is currently set is really more focused on alcohol consumption and underage drinking in these locations and their connection or restriction to the potential secondary effects with human trafficking. In this... I would just focus on the fact that the arbitrariness of age 21, it may be arbitrary whether it's 21 or 18, but those distinctions are ubiquitous in our laws. A lot of things turn on 18, a lot of things turn on 21. It may be arbitrary. You can't be president until you're 35. It's arbitrary, but we allow it. This is true, but we also allow people to be employed at 18, at 19, at 20 years old. And the appellees raised the case of Gary v. the city of Warner, and in that case, there has been a recent case, Maxwell Pickpick Organization, where, again, you can be an under-21-year-old dancer, could engage in dancing or observe in places that do not sell alcohol. And once again, we're at this point where what is the distinction between, and the same distinction this court made, that you could participate in nude dancing as long as there was no alcohol present. And that was the fourth factor that this court considered under the O'Brien test to make the least restrictive means possible in making that determination. The other issue that was raised was there's other areas of expression, other areas of venue, but do these other areas provide the regulation, the governmental potential regulation, security, cameras, managers, bouncers, where these potential dancers would possibly be more secure than in a private venue? I'm still confused. Did you admit that the individual plaintiff's claims are moot? Well, there are over 21 at this point, Your Honor, yes. Okay, so the only argument you now have is on behalf of the strip club or nude dancing establishment, and it has no First Amendment right here because this is age-related. So why are we arguing First Amendment? Well, I believe that this issue would be and would affect similarly situated people in the state of Texas who may come before this court. So you are attempting to make an overbreadth argument on behalf of people who are age 18 to 21? It would still continue to affect them, Your Honor. But that was not what I took your case... That was not the way I read your brief. I read your brief to be referring almost exclusively to the two plaintiffs raising overbreadth but not making clear what the club's personal First Amendment right was. So if the club has no First Amendment right because the ordinance, the statute, as applied to it is only age-related, how can the club assert First Amendment rights for people who are not present? It would be like me filing a lawsuit saying this statute is vague. Well, I think the court has to make some sort of determination to help third parties understand what their rights would be if they did want to apply for a job at this location. Then maybe you better find some 18-year-olds and risk prosecution. That's always a possibility as well, Your Honor. Well, in this case, we are also arguing that people do have a right to be employed and 18-, 19-, 20-year-olds also have that right to be employed as they wish. Are you arguing capable of repetition but evading review? I'm sorry, Judge? Are you arguing capable of repetition but evading review because of the age 18 to 21? Yes, Judge. I mean, we did file this case. They were both 19 and 20 years old. I see that my time is up. I ask that the court review this case and reverse the court's decision. Thank you very much. That will conclude the arguments this morning. The court stands adjourned.